Daniel S. Szalkiewicz, Esq. (DS2323)
VERIDIAN LEGAL P.C.
23 WEST 73RD STREET
SUITE 102
NEW YORK, NEW YORK 10023
*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| D.F., P.F., individually, and as parents of H.F., and H.F., a minor,<br><br>Plaintiff,<br><br>v.<br><br>AROOSH PATEL, BHAWAR PATEL, and MITTAL PATEL<br><br>Defendants. | **COMPLAINT**<br><br>Case Action No. 25 cv 18932 |

Plaintiff H.F. ("H.F."), P.F. ("P.F.") and D.F. ("D.F." and, together with P.F., "H.F.'s parents" and, together with H.F. and P.F., "Plaintiffs") by their attorneys VERIDIAN LEGAL P.C., as and for their Complaint hereby allege, upon information and belief, as follows:

### PRELIMINARY STATEMENT

1.      Defendant AROOSH PATEL ("Patel" or "Defendant") is a young man who, while in high school, impersonated a teenage girl on social media and duped no fewer than five of his fellow classmates – the majority if not all of whom were under the age of 18 – into sending him their intimate images.

2.      Once in possession of the intimate images, Patel would threaten to send them to the boys' classmates unless more images were received. When his victims delayed, pushed

1

back, or blocked his account Defendant's harassment would escalate with repeated phone calls and verbal threats to ruin his victims' chances of attending college and succeeding in life.

3.      Defendant trapped and bullied his victims into sending more and more images, promising them that their cooperation would be rewarded by him deleting their images.  But Defendant never deleted the images, blackmailing his fellow classmates over and over again until one boy finally had enough and went to the police.

4.      In June of 2024, H.F. became one of Patel's many victims.  That month, Patel impersonated a teenage girl named "Ally" on Snapchat, struck up a conversation with H.F. – a rising high school Sophomore – and induced H.F. to send two naked images of himself.  Shortly thereafter, H.F., feeling uneasy, blocked the account.

5.      Approximately one week later, H.F. was contacted by a friend – John Doe 1 – who, like H.F., had acquiesced to the request of an unknown teenage girl – now known to be Patel – asking for intimate pictures only to also block the account.  John Doe informed H.F. that the account was threatening to disseminate both H.F. and John Doe 1's images if H.F. did not accept a friend request.  To prove a point, the account had even sent John Doe 1 H.F.'s intimate image.

6.      Fearful that his images would be further disseminated, H.F. opened his Snapchat and allowed the account to connect with him.  Now using a new alias – "Lexi" – Patel directed H.F. to send more images, stating that if H.F. did so, all his images would be deleted.  If H.F. failed to send the new content, however, his images would be distributed.  H.F. sent the pictures.

7.      To H.F.'s dismay, Patel did not delete any of his intimate images and instead demanded more, threatening to disseminate the images he still possessed if additional content was not received.

8.     After approximately five weeks, feeling trapped in a never-ending cycle of threats, H.F. sought help from his sister and, soon thereafter, their parents.  Together, they messaged "Lexi" and indicated they would be going to the police.  Defendant's response to this news was to call H.F.'s parents' bluff – reasoning that his parents would never risk mass dissemination of the content – and create a new Snapchat account on which he would go onto disseminate H.F.'s content.

9.     Using that account and others, Patel sent H.F.'s images to kids he knew to be associated with H.F., including members of his soccer team, H.F.'s friends, and H.F.'s sister's friends.  Patel even attempted to connect with H.F.'s sister using his "[H.F.'s Full Name]Nudes" account, but his sister declined the request.

10.     Eventually police provided H.F. and his family with enough information for them to determine that the individual responsible for H.F.'s misery was AROOSH PATEL, a rising Senior with whom H.F. had never spoken.  Police further indicated that there were no fewer than nine other cyber tips related to the case, a number they considered staggering.

11.     Ultimately, despite Patel's prolific list of victims and an overwhelming amount of evidence tying Patel to his bad acts, he was offered and accepted a plea deal placing him on probation for 18 months.  The conditions of his probation called for him to complete 50 hours of community service, submit a DNA sample, submit to substance abuse testing, and write a 200-word apology letter to H.F. as well as a "1000 word essay on the dangers of extorting people online."

12.     The apology letter, which was signed using AROOSH PATEL's true name indicated that Patel knew what he was doing when he engaged in the offending behavior and made various excuses for doing it.  Patel wrote that he, too, was a victim of online extortion, had

built up anger and emotion, and was going through a horrible time in his life when he victimized H.F. and his friends. The letter was rife with platitudes about lessons learned, forgiveness, and sin. It made no indication that H.F.'s content had been deleted from Defendant's devices.

13. Defendant's court-mandated apology letter offered H.F. and his family zero comfort or peace, instead serving as written proof of the system's light-handed treatment of online sexual crimes. Notably, Plaintiffs never received a copy of Patel's thousand-word essay on the dangers of online extortion, despite being told they would, and remain uncertain whether it was even completed by Patel.

14. H.F. and his parents, P.F. and D.F., bring this lawsuit to be made whole for the unfixable damage Patel did to H.F. and his family – for the moments that have been inalterably shaped and affected by Defendant's conduct; for the paranoia and unease H.F. is now forced to carry as he moves through life; for the time and experiences H.F. and his family regularly lost when they were required to divert time and energy to pursuing Patel, criminally; for the resources devoted to therapy; for the poison and turmoil Defendant injected into H.F.'s family dynamics; and to deter Defendant and others like him from ever doing this to another human being again.

15. Accordingly, Plaintiff brings this action seeking injunctive, declaratory, and monetary relief against Defendant for violations of 18 U.S.C. § 225, 15 U.S.C. § 6851, New Jersey's nonconsensual pornography statutes, New Jersey's invasion of privacy statute, and the reckless or intentional infliction of emotional distress.

## **THE PARTIES**

16. Plaintiff H.F. is a citizen of the County of Hunterdon, State of New Jersey.

17.    Defendant Patel is a citizen of the State of New Jersey, with a last known address at 9 Joseph Court Sparta, New Jersey 07871.

18.    Defendant Patel is a recent graduate of Morris Catholic High School in Denville, New Jersey and will be attending Boston University in the Fall.

19.    Defendant BHAWAR PATEL ("Bhawar") is Defendant AROOSH PATEL's father.

20.    Defendant MITTAL PATEL ("Mittal" with Bhawar, "Defendant's parents" and, with Bhawar and Defendant Patel ("Defendants") is Defendant's mother.

## JURISDICTION AND VENUE

21.    This action is brought pursuant to 28 U.S.C. § 1331, federal question, pursuant to 15 U.S.C. § 6851 and 18 U.S.C. § 2252.

22.    Venue in this District is appropriate pursuant to 28 U.S.C. § 1391, as a substantial part of the events or omissions giving rise to the claim occurred in New Jersey.

23.    More specifically, Defendant Patel victimized multiple minor citizens of the State of New Jersey while they were present in New Jersey and did so while located in the State of New Jersey.

24.    At all relevant times, Defendants were and are citizens of the State of New Jersey, with Defendant's parents continuing to live at their longtime residence in Sparta, New Jersey and Defendant AROOSH PATEL attending college in Boston, Massachusetts beginning in Fall 2025.

25.    Upon information and belief, Patel resides in on campus housing and intends to return to his permanent address when school is not in session.

## FACTUAL ALLEGATIONS

**Defendant, Posing as a Teenage Girl, Contacts H.F.**

26.     In Summer 2024, H.F. was a fifteen-year-old rising Sophomore living in the State of New Jersey.  As a Freshman, H.F. quickly established himself as a gifted student and athlete, maintaining an above-average GPA and earning spots on his school's Varsity soccer and indoor and outdoor track teams.  H.F. was working hard to accomplish his dream of one day being admitted to an Ivy League institution.

27.     Socially, H.F. was well-liked and had friends at every grade level due to his participation in Varsity sports.

28.     At home, H.F. was exceptionally close with his parents and siblings.  The family often came together for outdoor adventures, road trips, and family game nights.

29.     On or about June 14, 2024, "AllySmith0406" ("Ally") added H.F. as a friend on Snapchat and began a conversation with H.F.

30.     Ally introduced herself as being a fifteen-year-old girl.  The pictures on her account supported this.  H.F. and Ally had been messaging one another throughout the day for the course of approximately one week when, one day, Ally sent images of her breasts and asked that H.F. share an intimate picture with her as well.

31.     H.F. had never received intimate images before.  Believing that it was only fair that they both possess one another's images; he obliged.

32.     Later in the evening, H.F. looked more closely at the images Ally had sent him. The images were grainy and did not appear legitimate.  Realizing he had been scammed, H.F. immediately regretted having sent images of himself.  H.F. suspected he had unwittingly been duped by some sort of scammer but was uncertain exactly what type of scam.  That night, he blocked Ally on Snapchat and hoped for the best.

**Patel Sextorts John Doe 1**

33.    H.F. endeavored to continued with his summer as planned, participating in travel soccer and various other activities.  He began to believe that blocking Ally had foiled whatever plot the bad actor had attempted to pull.

34.    Unfortunately, approximately one week after blocking the account, H.F. was contacted by a close friend from school, John Doe 1.  John Doe 1 indicated that he had connected with a girl – "Lexi" – on Snapchat to whom he had sent intimate images of himself.  John Doe 1 said that, after he sent the images and then blocked her, Lexi told him she was going to release the images.

35.    To show she was serious, Lexi sent John Doe 1 H.F.'s intimate images, a fact which John Doe 1 relayed to H.F.

36.    John Doe 1 asked H.F. to add Lexi on Snapchat, stating that Lexi had told him if he was able to do convince H.F. to add the account, she would delete the intimate images John Doe 1 had sent her.  If H.F. did not add Lexi on Snapchat, however, Lexi would release the images of both H.F. and John Doe 1.

37.    Feeling like he had no other choice, H.F. accepted the follow request.

38.    Almost immediately thereafter, Patel – posing as Lexi – began threatening H.F., demanding that he send new images.  Lexi stated she lived in New Jersey and knew H.F.'s classmates.  Lexi claimed that she would delete all the pictures of H.F. so long as he sent more immediately.

39.    H.F. felt he had no other choice.  Patel had already proven he still possessed H.F.'s intimate content and had no qualms about disseminating it by sending it to John Doe 1.

H.F. hoped he could negotiate some sort of deletion terms with Lexi – anything to stop her from sending his content out to his classmates.

40.     This time, the account had specific requests.  At first it was images of H.F. in the shower and images of H.F.'s entire body naked in which his face was visible.  H.F. delayed sending the content as long as possible, claiming to be at soccer camp, but Lexi's threats would not relent.

41.     Message after message about how H.F.'s life would be ruined if he did not cooperate began to roll in.  Later, repeated phone calls initiated through Snapchat with no one on the other end.

42.     Eventually, H.F. sent the content simply to put an end to the harassment.   He hoped this would satiate Lexi and she would leave him alone.

43.     Contrary to prior representations, Lexi did not delete the content after receiving additional images.  Instead, she demanded more and made other, stranger requests, such as videos in which H.F. needed to be making noises and even videos of H.F. urinating.

44.     Over the course of five weeks, H.F. was made to send Patel – who he still knew only as Lexi or Ally – intimate content on demand.  If H.F. was not prompt enough in sending the content, he would receive multiple calls and threat after threat that his entire school would be receiving the pictures and videos he had already sent.

45.     On one occasion, Patel even threatened to upload H.F.'s content on Reddit.

46.     Patel routinely warned H.F. that his dreams of attending an Ivy League school would be over if his images were released – along with it was any hope of getting a good job after college.  Young, alone, and overwhelmed, H.F. believed him.

47.     Over the course of the summer, H.F. was induced and or directed to send under threat of further dissemination approximately twenty intimate images and videos to Lexi/Ally.

48.     The daily harassment and threats, paired with the ongoing deception in which he was forced to engage with his parents and siblings weighed heavily on H.F.  He grew intermittently despondent and hot tempered.

49.     On July 17, 2024, H.F. confided in his sister what had been happening to him. Together they informed their parents and, that evening, the family talked through what happened and attempted to capture as much online information as they could retrieve.

**H.F. Seeks Help from Parents, Police; Patel Mass-Distributes Intimate Content**

50.     H.F.'s parents, P.F. and D.F., using H.F.'s phone, watched as Patel messaged H.F. throughout the night with threats to distribute H.F.'s images and videos.  Soon, H.F. began receiving calls through Snapchat.  In the brief time H.F.'s parents were in possession of H.F.'s phone, they were overwhelmed by the frequency and degree of Defendant's harassment.

51.     Patel's threats only increased after H.F. and his parents went to the police.

52.     H.F.'s parents repeatedly reported Defendant's account but each time they did, Defendant would only create another and continue his harassment.  They warned Patel that he was now speaking with H.F.'s parents and to stop harassing H.F. or else they would go to the police.

53.     In response, Patel wrote: "Do as i say…You don['t] know wh[o] I am…An[d] idgaf…Plus if this his parents [t]his will not be happening…No parent wants their kids nudes saved whywher[e]…Who am i th[e]n?...U thought u ate[1]…Oh nah…[A]sshole…Ur leaked im

---

[1] "You ate" is a popular social media slang term meaning someone has done something well, as in "You nailed it" or "You killed it."

tired [o[f] u bull…No more second chances…I'm done…Ive been so nice

too…Woe…Wow…Yeah ur don[e.]"



54.    Patel, having not received the content he had demanded, followed through on his

threat.

55.    Patel then created a Snapchat account entitled "Add For [H.F.'s true name]

Noodles" on which he uploaded a story with a countdown to when he would "leak" the images.

56.    One slide stated "Leaking tonight at 730[.]" Another said "Leaking starts tn at 7

pm[.]"

57.    Privately, the account began messaging H.F. stating "Hey so while ur at it…Tell

[John Doe 1] he will be leaked too…Ur first tho!"

58.     The countdown and threats were meant to and did throw Plaintiffs into a panic. Had they done the right thing?  They wondered whether police would be able to identify the unknown individual.  More so, they wondered whether the account would follow through on its threat.

59.     On or about July 18, 2024, Defendant sent H.F.'s intimate content to multiple students at H.F.'s school, including the Captain of H.F.'s soccer team, H.F.'s best friend, and various other classmates.  This continued over the course of several days.

60.     On July 18, 2024, H.F. and his parents filed a police report, providing a USB device which contained at least thirteen pictures of H.F. which had been received by his friends.

61.     H.F. was underage when each and every image was taken and each and every individual who received the images was underage when they received the images.

62.     As the week went on, more and more of H.F.'s friends contacted him to let him know that they, too, had been sent his intimate content.  H.F.'s friends informed him that the images were coming from various accounts, including one which contained H.F.'s full name and another which referenced H.F.'s school.

63.     Less than a week after filing the police report, a detective informed H.F.'s family that the I.P. address responsible for the harassment tracked back to Sparta, New Jersey. Reviewing the school's family directory, it was immediately clear who had been harassing H.F.: Defendant AROOSH PATEL.

**Patel's Devices are Seized; H.F.'s Family Prepares for Return to School**

64.     While police initially refused to identify Defendant by name, they informed H.F.'s family that the perpetrator's devices were seized approximately two weeks after H.F.'s police report.

65.     According to police, the I.P. address associated with the perpetrator was tied to nine related cyber tips and had victimized individuals across multiple New Jersey jurisdictions.

66.     Meanwhile, news of the incident, gossip about who was victimized, and speculation about the perpetrator's identity was tearing through H.F.'s school.  H.F. knew of no fewer than fifty Sophomores – more than half of the Sophomore class – who had received his intimate content.  As both H.F. and his sibling have learned of Juniors and Seniors who also received the content, H.F. is confident the number is, in fact, much higher.

67.     As the first day of school approached, H.F. and his family became increasingly fearful that the police would not act in time to stop Defendant from attending.  Their fears ranged from worrying that H.F. would be forced to endure the emotional trauma of passing Defendant in the hallway to concern that Defendant might physically retaliate against H.F. and/or the rest of his school.

68.     H.F. and his family also had genuine fear that Patel's sister, who was in H.F.'s class, would remain at the school and may harbor ill will and retaliate against H.F. for reporting and pursuing her brother.

69.     Approximately two weeks before school was scheduled to resume, H.F.'s family contacted the school and, soon thereafter, met with school leadership to discuss what had occurred.

70.     Thereafter, and prior to the first day of school, despite presumably being aware of the execution of search warrants on her son's devices at the family's home and various police interviews, Defendant's mother, Mittal Patel attended a school event at which she knew P.F. would be present.

71.    Mittal Patel's decision to attend the event only terrified H.F. and his family more, making it seem certain that Defendant intended to return to the school in the Fall.

72.    School officials warned P.F. that Mittal Patel would be present and cautioned P.F. against attending the meeting.  However, believing her behavior would send a message to her son, P.F. on how to handle the situation, P.F. attended the event.

73.    Thankfully, days before school was scheduled to start, Defendant was expelled.

74.    Defendant was arrested on September 26, 2024.

**Defendant Receives Slap on the Wrist, Accepts Spot at Boston University**

75.    As the criminal case against Defendant progressed, H.F. and his family were surprised to learn that, despite the fact that Defendant had victimized no fewer than five classmates, H.F. was the only one who was willing to testify and pursue the matter, criminally.

76.    Because of this, only four charges were brought against Defendant, including those relating to endangering the welfare of a child by distributing child pornography; possessing child pornography; sexual extortion; and cyber harassment.

| Charges and Related Information: Put lead disposition first | | | | | | |
|---|---|---|---|---|---|---|
| Ct # | Initial Charge | Final Charge | Plea/Find | Final Statute | Deg. | Penalties |
| Docket #: FJ-19-40-25 | | Date of Offense: 07/18/2024 | | Date of Arrest: 09/26/2024 | | |
| 1 | 2C:24-4B(5)AI | | D | | 2nd | $0 |
| 2 | 2C:24-4B(5)BIII | | D | | 3rd | $0 |
| 3 | 2C:14-9.1C(2) | Sexual Extortion | P:G | 2C:14-9.1A(2) | 3rd | $0 |
| 4 | 2C:33-4.1A(2) | Cyber Harassment | P:G | 2C:33-4.1A(2) | 4th | $0 |

(See Exhibit "1").

77.    Ultimately, on February 21, 2025, Defendant accepted a plea deal whereby he was placed on probation for eighteen months, not allowed to possess weapons, and prohibited from contacting H.F. or his family.

78.     Other conditions of Defendant's probation were that he engage in community service; provide a DNA sample and payment; submit to random substance abuse testing; and, outrageously, write two short documents: a "minimum 200 word apology letter to H.F.; 1000 word essay on the dangers of extorting people online[.]"

79.     While the family's victims advocate told them they were entitled to and would receive Patel's 1000 word essay, it was never received..

80.     The Disposition Order indicates that, at the end of the probation period, Defendant can make an application for a retroactive carry order.

81.     On or about March 18, 2025, H.F. received his apology letter (Exhibit "2").  In it, Defendant admitted to committing a "horrible sin" in doing "a terrible thing to you and your friends[.]"  Defendant further indicated he "knew what [he] was doing" and claimed he "now know[s]" he does not want to cause "this type of pain and suffering" again.

82.     Defendant indicated "I had a similar experience happen to me, and I built up anger and emotion and feelings that were directed where they should not have been."  Defendant finally stated that "I hope and pray that over time this atrocious situation will lessen in your memory…"

83.     Defendant's apology has rung hollow to H.F. and his family and Defendant has faced minimal consequences for the devastation he caused to at least a half dozen families.

84.     Shortly after being expelled from H.F.'s school, Defendant was re-enrolled at another private school that is apparently blissfully unaware of the predator they allowed into their hallways.

85.     The school, Morris Catholic High School, routinely updates the public with updates on their Senior class and has proudly featured Defendant on their Senior Spotlight, among other posts.

86.     Not only was Defendant voted "Most Theatrical" by his classmates, he has also been accepted into and plans to attend Boston University.

87.     Upon information and belief, Defendant has not notified Boston University about the criminal charges to which he pleaded guilty.

88.     Upon information and belief, Defendant received special accommodations and more lenient treatment than is typical for probation to allow him to attend college out of state.

89.     H.F. cannot help but feel an immense sense of injustice that his entire high school experience has been and will forever be tainted by Defendant whereas Defendant has been able to walk away from his offenses with a bit of community service and an insincere apology letter.

90.     As egregiously, for weeks Patel engaged in criminal and tortious conduct, threatening to and eventually actually disseminating H.F.'s intimate content with the stated goal of making it impossible for H.F. to attend a top-tier college.  Now, despite all his conduct and the half a dozen minors – at minimum – he victimized and despite Patel allegedly being placed on probation, he simply is allowed to leave the state and his trail of destruction behind him.

91.     Worse yet, after 18 months, Patel can request that his slate be wiped clean.

92.     Given the absolute absence of accountability Patel has had to face to date, H.F., P.F., and D.F. have little doubt that Patel will go onto victimize more young people in the future.

**H.F. Struggles with Victimization**

93.     H.F., since the moment he was first extorted, was sent into a trauma and anxiety-induced freefall.

94.     On the night H.F. informed his parents about what had happened, he insisted he not be allowed to sleep alone for fear that he might harm himself.

95.     Though H.F. quickly entered therapy to cope with the events and related emotions, both he and his family have struggled to maintain a semblance of normalcy since July 2024.

96.     Initially, as the days and weeks passed, H.F. grew short-tempered and defiant – a departure from the kind and jovial teenager he had been at the beginning of the summer.

97.     New developments in the criminal case triggered H.F., throwing him back into unending trauma holes during which time H.F. was unable to move forward and would sometimes spend hours in uncontrollable tears.

98.     H.F. also began retreating from his passions – namely soccer – embarrassed because so many of his images had been sent to his teammates.

99.     Worse yet, H.F.'s family dynamic was devastated by the incident, with tensions flaring night after night.  H.F.'s relationships with his siblings and his parents suffered greatly.

100.    In the weeks and months after the incident, it became more common for there to be an argument at home than ever before.  H.F. and his siblings were routinely at odds with one another, and it was not uncommon for the entire family to end up sleeping in one bed after yet another blowout.

**H.F. is Forever Changed**

101.    H.F.'s life has been devastated by Defendant's intrusion and callous disregard for his privacy.

102.    While Defendant Patel was actively sextorting H.F. he suffered enormous amounts of fear and anxiety over the threats to his reputation and educational and professional prospects.  H.F. felt like a prisoner, forced to respond to Defendant Patel's seemingly endless demands for additional content.

103.    Hiding his victimization from his family further harmed H.F.'s mental health. H.F. grew distant from his family to protect the secret pain he was experiencing.  He experienced difficulty sleeping and was constantly worried that Defendant Patel would follow through on his threats.

104.    At school, AROOSH PATEL forever changed the course of H.F.'s high school experience.  H.F. must live with the daily discomfort of knowing that upperclassmen, his peers, and teammates have all seen him naked and engaging in whatever demands Defendant Patel forced upon him.  H.F. knows this because some people knew him well enough to disclose to him what they had received.

105.    H.F. did not wish for these people to view him in his most intimate moments but AROOSH PATEL sent the content to them anyway, solely so he could punish H.F. for not giving into his extortionate demands for additional intimate content.

106.    Perhaps worse yet, however, is the unknown – the countless individuals who H.F. has reason to suspect received his images but who did not know H.F. well enough to report what they had received.  H.F. knows he passes these students in the hallway day after day.

107.    For H.F., interactions with these less familiar classmates can be complicated and triggering.  A lingering glance can cause a waterfall of anxiety, frustration, and intrusive thoughts.

108.    While some students attempt to diffuse the tension of the situation by making jokes, many more simply talk about it behind H.F.'s back.  Both make H.F. uncomfortable and remind him of the horrific trauma he was forced to endure.

109.    H.F. knows that many students still possess the images and will forever fear that the content is still circulating and will one day find its way onto the internet, if it is not already there.  Compounding this fear is the fact that Defendant AROOSH PATEL has made no representations that he has deleted the content.

110.    An excellent student, H.F. often becomes distracted in classes due to passing thoughts that people have seen his images or that Defendant's actions will somehow impact his chances of succeeding in life.

111.    Even being told that he looks familiar by individuals from other schools can lead to panic and overwhelming self-consciousness.  The incident has made H.F. innately untrusting and doubtful of strangers' motives.

112.    He will never again know a day where his body is his and his alone.  Defendant AROOSH PATEL stole his privacy and stole his autonomy.

113.    Once outgoing and fearless, H.F. finds himself experiencing fear and distrust in situations he would have previously regarded as unremarkable.  Innocuous visits to public places, for example, can bring H.F. anxiety as he is fearful that he will be recognized by yet another recipient of the images.

114.    H.F.'s homelife has also been devastated.  Though revealing his secret to his family initially felt like a burden had been lifted, the weight was quickly replaced by intense anger, shame, self-blame, guilt, and sadness.

115.    Time spent alone around the house – even lying in bed at night – has become its own form of torture to H.F.

116.    H.F. has received mental health treatment following the incident.

**Plaintiffs' Family Dynamics**

117.    P.F. and D.F., Plaintiff H.F.'s parents, have also been deeply impacted by Defendants' actions, which frequently throw their family through a chaotic mix of emotions.

118.    While P.F. and D.F. previously looked to H.F. as a responsible older brother capable of managing his own time on his devices, navigating day to day matters with his siblings, and helping around the house and with his siblings, this is no longer the case.

119.    D.F. and P.F. now must more actively monitor H.F.'s relationship with technology and find themselves scrutinizing his time spent with a screen – picking apart whether the time is spent watching a movie or on social media – and wondering whether the distraction is good for H.F.'s mental health or detrimental.

120.    Now, instead of H.F. serving as a caretaker for the family's youngest, H.F.'s family is focused on taking care of H.F.

121.    D.F. and P.F. have also noticed a change in their son and indicate that, since the incident, H.F. has been more prone to outbursts of anger and frustration.  They find themselves bringing H.F. to therapy to manage his emotions for the first time.  Sometimes H.F.'s parents join him there.

122.    D.F. and P.F. believed their teenage son would be becoming more independent during these years but, as a direct result of Defendant's actions, they now feel the need to bring him closer and rely on him less.

123.    Seeing H.F. and their parents upset has also caused H.F.'s siblings to become distressed themselves, with H.F.'s younger sibling blaming H.F. for the changing family dynamics and, at points, refusing to be near H.F., hold his hand, or embrace him.

124.    H.F.'s siblings have also been forced into caretaker roles, as they struggle to support their brother and feel a need to keep an ever-vigilant eye on his mental health.

125.    As a result of Patel's conduct, P.F. and D.F. feel the intense need to keep all their children close rather than allowing them room to grow.  P.F. and D.F. find themselves denying their kids' age-appropriate requests to see friends and engage in other independent activities that they otherwise would have agreed to, had Patel not thrown their family into a tailspin.

126.    This change in parenting style is not lost on or appreciated by H.F.'s siblings, who frequently blame H.F. for the restrictions placed on time spent with friends or on technological devices.

127.    Managing the scholastic and criminal aspects of H.F.'s victimization has resulted in less time for H.F.'s parents to focus on their other children and careers.  H.F.'s parents mourn for their child's loss of his high school experience but also for their other children whose lives have been impacted by it.

128.    Birthdays and other normally pleasant and celebratory occasions have been marred by fighting which devolves into silence and tears.

129.    D.F. and P.F. struggle with a desire to keep the incident a secret so as to preserve H.F.'s privacy while also explaining to close friends and family why they have been so distant and irritable.

130.    Neither P.F. or D.F. have shared details of the incident or impacts on H.F. and their other children with their immediate family, extended family, or friends.  As a result, the family has increasingly limited contact with third parties with whom they were once close.

131.    D.F. has missed meetings and taken off from work to assist his family in navigating its way through this crisis.

132.    The stress, anxiety, and uncertainty following H.F.'s victimization so deeply impacted his father, D.F., that he lost twenty pounds in the span of six weeks.  D.F. received multiple diagnoses which link his health decline to anxiety caused by this incident.

133.    P.F., H.F.'s mother has also been deeply impacted by Defendant Patel's actions and has found herself unable to sleep, trapped in fits of crying, and crippled by fears of how this will impact her children.

## FIRST CAUSE OF ACTION
### (Violation of 15 USC § 6851)

134.    Plaintiffs repeat and reallege the allegations stated above as if fully set forth herein.

135.    Defendant AROOSH PATEL disclosed intimate images of H.F. using his cell phone/computer.

136.    Defendant AROOSH PATEL did not obtain H.F.'s consent to disclose the images.

137.    Defendant AROOSH PATEL knew that H.F. did not consent to the disclosure of the content online.

138.    As a result of Defendant AROOSH PATEL's conduct, H.F. has been damaged.

139.    Plaintiffs demand judgment for any actual damages which exceed the jurisdictional limits of all lower courts which would have otherwise have jurisdiction of this matter, but not less than $150,000.00, together with damages for pain and suffering and punitive damages, attorney's fees, costs of this litigation, injunctive relief preventing Defendant Patel from disseminating the images, and such other relief as the Court deems equitable and just.

**SECOND CAUSE OF ACTION**
**(Intentional or Reckless Infliction of Emotional Distress)**

140.    Plaintiffs repeat and reallege the allegations stated above as if fully set forth herein.

141.    Defendant AROOSH PATEL has engaged in the intentional, extreme, and outrageous conduct of catfishing H.F. to acquire his intimate images and then engaging in an extortion scheme whereby he induced H.F. to send him additional content in exchange for not widely disseminating the intimate images he already possessed.

142.    Additionally, Defendant AROOSH PATEL harassed and verbally abused H.F. to further incentivize and force his cooperation.  When H.F. was not quick enough to send new content, Defendant Patel would increase his harassment by initiating repeated calls to H.F. and threatening that if he did not send additional images he would never get into an Ivy League college.

143.    When H.F. finally took a stand against Defendant Patel, Defendant Patel created multiple social media accounts in H.F. and their school's true name in order to further disseminate H.F.'s content.

144.    Defendant Patel's goal was to cause Plaintiff H.F. severe emotional distress so Defendant Patel could control his conduct and scare and intimidate him into sending additional

content.  Defendant Patel's plan only worked if Plaintiff H.F. had a deep and true fear that Patel would follow through on his threats and such follow through would harm his reputation.

145.    Defendant Patel engaged in such behavior knowing that his decision to do so would have irreversible, lifelong consequences for H.F. and his mental well-being.

146.    Defendant Patel's conduct was so extreme in degree and so outrageous in character that it goes beyond all possible bounds of decency.

147.    Defendant Patel's sole purpose in sharing the images was to harass and/or embarrass H.F. and cause him harm.

148.    Defendant Patel intended to cause severe emotional distress or recklessly disregarded the likelihood that such conduct would tend to cause severe emotional distress.  Such outrageous behavior is beyond the limits of decency and is intolerable in a civilized society.

149.    As a direct and proximate result of Defendant Patel's conduct, Plaintiff H.F. suffered severe emotional distress.

150.    Defendant Patel acted with the intent to cause severe emotional distress, or alternatively, disregarded the substantial probability that his actions would cause severe emotional distress.

151.    Here, the acts of Defendant Patel were so egregious and were done so clearly with malice and/or reckless indifference in the face of a perceived risk that his actions would harm Plaintiff H.F.'s reputation and mental well-being, that, in addition to all the damages inflicted upon H.F. and in addition to all the measure of relief to which H.F. may properly be entitled herein, Defendant Patel should also be required to pay punitive damages to punish him for his reckless conduct in the further amount greater than the jurisdictional limit of all lower courts to

be determined by the trier of fact, in order to deter him and others similarly situated from engaging in such conduct in the future.

152.    Plaintiffs demand judgment against Defendant Patel in an amount to be determined upon the trial of this action; said amount being sufficient to compensate Plaintiff H.F. for his severe injuries as well as an amount sufficient to punish Defendant Patel for his willful, wanton, reckless, and unlawful conduct constituting a complete and reckless disregard for Plaintiff H.F., together with interest, attorneys' fees, costs, and disbursements in this action; and said amount exceeding the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

**THIRD CAUSE OF ACTION**
**(Violation of N.J.S.A. 2A:58D-1)**

153.    Plaintiff repeats and realleges the allegations stated above as if fully set forth herein.

154.    New Jersey Statute 2A:58D-1 states:

> a. An actor who, in violation of section 1 of P.L.2003, c. 206 (C.2C:14-9), photographs, films, videotapes, records, or otherwise reproduces in any manner, the image of another person who is engaged in an act of sexual penetration or sexual contact, the exposed intimate parts of another person, or the undergarment-clad intimate parts of another person shall be liable to that person, who may bring a civil action in the Superior Court.

> b. An actor who, in violation of section 1 of P.L.2003, c. 206 (C.2C:14-9), discloses any photograph, film, videotape, recording or any other reproduction of the image of another person who is engaged in an act of sexual penetration or sexual contact, the exposed intimate parts of another person, or the undergarment-clad intimate parts of another person shall be liable to that person, who may bring a civil action in the Superior Court. For purposes of this section: (1) "disclose" means sell, manufacture, give, provide, lend, trade, mail, deliver, transfer, publish, distribute, circulate, disseminate, present, exhibit, advertise , offer, share, or make available via the Internet or by any other means, whether for pecuniary gain or not; and (2) "intimate parts" has the meaning ascribed to it in N.J.S.2C:14-1.

> c. The court may award:

(1) actual damages, but not less than liquidated damages computed at the rate of $1,000 for each violation of this act;
(2) punitive damages upon proof of willful or reckless disregard of the law;
(3) reasonable attorney's fees and other litigation costs reasonably incurred; and
(4) such other preliminary and equitable relief as the court determines to be appropriate.

A conviction of a violation of section 1 of P.L.2003, c. 206 (C.2C:14-9) shall not be a prerequisite for a civil action brought pursuant to this section.

155.    The photographs mentioned above depict Plaintiff H.F.'s exposed intimate parts, namely his genitals.

156.    Defendant Patel distributed the picture without Plaintiff H.F.'s permission or consent.

157.    Defendant Patel has violated New Jersey Statute 2A:58D-1.

158.    As a result of Defendant Patel's actions, the Plaintiffs demand judgment for any actual damages which exceed the jurisdictional limits of all lower courts which would have otherwise have jurisdiction of this matter, together with damages for pain and suffering and punitive damages, attorney's fees, costs of this litigation and such other relief as the Court deems equitable and just.

## FOURTH CAUSE OF ACTION
### (Invasion of Privacy: Publicity Given to Private Life)

159.    Plaintiffs repeat and reallege the allegations stated above as if fully set forth herein.

160.    By engaging in the above-described activities, Defendant Patel intruded on Plaintiff H.F.'s physical solitude and seclusion.

161.    The images depicting H.F.'s exposed genitals constitute a public disclosure of private facts.

162.    It is clear that Defendant Patel has publicly disclosed private facts by sending H.F.'s intimate content to their classmates.

163.    The matter being publicized by Defendant Patel – namely Plaintiff H.F.'s intimate images – would be highly offensive to a reasonable person and is not of legitimate concern to the public.

164.    Defendant Patel violated H.F.'s New Jersey constitutional right of privacy, in particular, H.F.'s rights against public disclosure of private facts (e.g., making public private information about plaintiff) and right to solitude, seclusion, or private affairs and concerns.

165.    Defendant Patel intruded upon and violated the privacy of H.F. knowingly, recklessly, and with malice aforethought when, without H.F.'s knowledge and consent, he disseminated Plaintiff H.F.'s highly intimate images.

166.    By distributing the pictures, Defendant Patel sought to embarrass and humiliate H.F. and such embarrassment and humiliation was reasonably foreseeable.

167.    Defendant Patel also sought to harm the reputation of H.F.and such harm from his actions was reasonably foreseeable.

168.    As a proximate and direct cause of Defendant Patel's actions which violated H.F.'s rights of privacy, H.F. suffered emotional distress, pain and suffering, and a harm to his reputation.

169.    As a result of Defendant Patel's actions, Plaintiff H.F. demands judgment for any actual damages which exceed the jurisdictional limits of all lower courts which would have otherwise have jurisdiction of this matter, together with damages for pain and suffering and punitive damages, attorney's fees, costs of this litigation, and such other relief as the Court deems equitable and just.

## FIFTH CAUSE OF ACTION
### (18 U.S.C. § 2252(A))

170.    Plaintiffs repeat and reallege the allegations stated above as if fully set forth herein.

171.    Defendant Patel knew that H.F. was fifteen years of age in all of the images that Defendant Patel sent to third parties.

172.    Defendant Patel has previously admitted to and pleaded guilty to possessing and distributing child pornography in a criminal case in which H.F. was the only complainant.

173.    In the images, Plaintiff H.F. is engaging in actual or simulated sexually explicit conduct.

174.    As a result of Defendant Patel's actions, Plaintiff H.F. demands judgment for any actual damages which exceed the jurisdictional limits of all lower courts which would have otherwise have jurisdiction of this matter, together with damages for pain and suffering and punitive damages, attorney's fees, costs of this litigation, and such other relief as the Court deems equitable and just.

## SIXTH CAUSE OF ACTION
### (Violation of N.J. Stat. Ann. §2A:53A-15)

175.    Plaintiffs repeat and reallege the allegations stated above as if fully set forth herein.

176.    Defendants Bhawar and Mittal Patel failed or neglected to exercise reasonable supervision and control of their then-minor child, AROOSH PATEL and, accordingly, have vicarious liability for the foreseeable damages that resulted from their failure to supervise and control him.

177.    As a result of Defendants' actions, Plaintiffs demand judgment for any actual damages which exceed the jurisdictional limits of all lower courts which would have otherwise have jurisdiction of this matter, together with damages for pain and suffering and punitive

damages, attorney's fees, costs of this litigation, and such other relief as the Court deems equitable and just.

## SEVENTH CAUSE OF ACTION
### (Violation of New Jersey's Common Law Tort of Seduction)

178.    Plaintiffs repeat and reallege the allegations stated above as if fully set forth herein.

179.    Defendant Patel violated H.F.'s privacy, resulting in the "consequent degradation, mortification, and wounded feelings visited upon" H.F. and his parents stemming from such violation.

180.    As a result of Defendants' actions P.F. and D.F. suffered loss of H.F.'s services, companionship, and society.

181.    P.F. and D.F., as a result of Defendants' actions, have further been forced to expend time and financial resources toward medical treatment both for H.F. and for themselves.

182.    P.F. and D.F. have also expended time and resources in order to pursue the matter criminally and care for their child emotionally.

183.    As a result of Defendants' actions, Plaintiffs demand judgment for any actual damages which exceed the jurisdictional limits of all lower courts which would have otherwise have jurisdiction of this matter, together with damages for pain and suffering and punitive damages, attorney's fees, costs of this litigation, and such other relief as the Court deems equitable and just.

## EIGHTH CAUSE OF ACTION
### (Reckless Infliction of Emotional Distress Upon P.F. and D.F.)

184.    Plaintiffs repeat and reallege the allegations stated above as if fully set forth herein.

185.    Defendants have engaged in the reckless, extreme, and outrageous conduct of extorting H.F. to induce him to send intimate images of himself.

186.    Defendant Patel engaged in such behavior knowing that his decision to do so would have irreversible, lifelong consequences for H.F. and his mental well-being and concomitant devastating effects on H.F.'s parents.

187.    Defendant Patel's conduct was so extreme in degree and so outrageous in character that it goes beyond all possible bounds of decency.

188.    Defendant Patel's sole purpose in sharing the images was to harass and/or embarrass H.F. and cause him harm.

189.    Defendant Patel intended to cause severe emotional distress or recklessly disregarded the likelihood that such conduct would tend to cause severe emotional distress.  Such outrageous behavior is beyond the limits of decency and is intolerable in a civilized society.

190.    As a direct and proximate result of Defendant Patel's conduct, Plaintiffs suffered severe emotional distress.

191.    Defendant Patel acted with the intent to cause severe emotional distress, or alternatively, disregarded the substantial probability that his actions would cause severe emotional distress.

192.    Here, the acts of Defendant Patel were so egregious and were done so clearly with malice and/or reckless indifference in the face of a perceived risk that his actions would harm Plaintiffs, that, in addition to all the damages inflicted upon Plaintiffs and in addition to all the measure of relief to which Plaintiffs may properly be entitled herein, Defendant Patel should also be required to pay punitive damages to punish him for his reckless conduct in the further amount

greater than the jurisdictional limit of all lower courts to be determined by the trier of fact, in order to deter him and others similarly situated from engaging in such conduct in the future.

193.    Plaintiffs demand judgment against Defendant Patel in an amount to be determined upon the trial of this action; said amount being sufficient to compensate Plaintiffs for their severe injuries as well as an amount sufficient to punish Defendant Patel for his willful, wanton, reckless, and unlawful conduct constituting a complete and reckless disregard for Plaintiffs together with interest, attorneys' fees, costs, and disbursements in this action; and said amount exceeding the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

## NINTH CAUSE OF ACTION
### (Liability Under N.J. Stat. Ann. § 2A:53A-17.1)

194.    Plaintiffs repeat and reallege the allegations stated above as if fully set forth herein.

195.    BHAWAR PATEL and MITTAL PATEL failed to exercise reasonable supervision and control over AROOSH PATEL

196.    BHAWAR PATEL and MITTAL PATEL were negligent in their supervision and control over AROOSH PATEL

197.    AROOSH PATEL plead guilty to Cyber Harassment and Sexual Extortion.

198.    As a result, BHAWAR PATEL and MITTAL PATEL are liable for AROOSH PATEL's conduct.

199.    Plaintiffs demand judgment against Defendant Patel in an amount to be determined upon the trial of this action; said amount being sufficient to compensate Plaintiffs for their severe injuries as well as an amount sufficient to punish Defendant Patel for his willful,

wanton, reckless, and unlawful conduct constituting a complete and reckless disregard for Plaintiffs together with interest, attorneys' fees, costs, and disbursements in this action; and said amount exceeding the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

## TENTH CAUSE OF ACTION
### (Vicarious by BHAWAR PATEL and MITTAL PATEL)

200.    Plaintiffs repeat and reallege the allegations stated above as if fully set forth herein.

201.    Shortly after Plaintiffs first reported the sextortion scheme to police, they were informed by detectives that the I.P. address being used had a staggering number of complaints against it.

202.    Upon information and belief, the complaints were made by H.F. and other victims of AROOSH PATEL.

203.    Upon information and belief, Defendants' cable company sent notice(s) to the account holder, BHAWAR PATEL or MITTAL PATEL

204.    BHAWAR PATEL and MITTAL PATEL failed to exercise reasonable supervision and control over AROOSH PATEL.

205.    BHAWAR PATEL and MITTAL PATEL were negligent in their supervision and control over AROOSH PATEL.

206.    AROOSH PATEL pleaded guilty to Cyber Harassment and Sexual Extortion.

207.    Plaintiffs repeat and reallege the allegations stated above as if fully set forth herein. As part of his plea deal, AROOSH PATEL was directed to write an apology letter to H.F. and his family.  The resulting letter stated that, at the time AROOSH PATEL was extorting H.F.

AROOSH PATEL was experiencing a "horrible time in [his] life[,]" was "struggling with [his] own identity and values[,]" "had a similar experience happen to [him], and [he] build up anger and emotion and feelings that were directed where they should not have been."

208.    AROOSH PATEL's admitted prior victimization and resulting anger issues placed BHAWAR PATEL AND MITTAL PATEL on notice of AROOSH PATEL's propensities and the natural and foreseeable consequence of allowing him unfettered access and control over devices which could be used to commit similar crimes against other children.

209.    Upon information and belief, AROOSH PATEL's cellphone and all other electronic devices were paid for and provided to him for use by his parents, BHAWAR PATEL and MITTAL PATEL.

210.    Upon information and belief, the internet service provider at the Patel family home which AROOSH PATEL used to harass H.F. was similarly paid for and provided to him by his parents, BHAWAR PATEL and MITTAL PATEL.

211.    H.F.'s family was initially informed only that the individual who engaged in the harassment resided in Sparta and no other information about that individual.  Upon information and belief, although at least one other student lived in Sparta, as well as AROOSH PATEL's sibling, H.F. and his family immediately believed AROOSH PATEL was the responsible individual due to his known behavior and conduct at school which was universally considered off-putting and peculiar.

212.    Upon information and belief, between AROOSH PATEL's prior victimization and his unusual conduct at school, BHAWAR PATEL and MITTAL PATEL should have been aware of AROOSH PATEL's propensity to harm others and/or himself online and could have

prevented the harassment by taking reasonable steps to monitor and limit AROOSH PATEL's online activities and/or obtaining mental health treatment for their child.

213.    As a result, BHAWAR PATEL and MITTAL PATEL are liable for AROOSH PATEL's conduct.

214.    Plaintiffs demand judgment against Defendants in an amount to be determined upon the trial of this action; said amount being sufficient to compensate Plaintiffs for their severe injuries as well as an amount sufficient to punish Defendants for their willful, wanton, reckless, and unlawful conduct constituting a complete and reckless disregard for Plaintiffs together with interest, attorneys' fees, costs, and disbursements in this action; and said amount exceeding the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

## ELEVENTH CAUSE OF ACTION
### (Aiding and Abetting by BHAWAR PATEL and MITTAL PATEL)

215.    Plaintiffs repeat and reallege the allegations stated above as if fully set forth herein.

216.    By providing AROOSH PATEL with the devices and internet service with which he accomplished his harassment, BHAWAR PATEL and MITTAL PATEL aided AROOSH PATEL in harassing H.F.

217.    BHAWAR PATEL and MITTAL PATEL were aware of their role in AROOSH PATEL's harassment at the time it was being committed.

218.    Despite knowing what AROOSH PATEL was doing, BHAWAR PATEL AND MITTAL PATEL took no action to stop or modify AROOSH PATEL's conduct, including but not limited to taking away his devices or internet access, knowingly and substantially assisting him in continuing his campaign of harassment against H.F.

219. In refusing to take any action to prevent AROOSH PATEL from sextorting individuals online, despite knowing his propensity for doing so, BHAWAR PATEL and MITTAL PATEL acted with deliberate indifference to foreseeable harms that would occur.

220. Plaintiffs demand judgment against Defendants in an amount to be determined upon the trial of this action; said amount being sufficient to compensate Plaintiffs for their severe injuries as well as an amount sufficient to punish Defendants for their willful, wanton, reckless, and unlawful conduct constituting a complete and reckless disregard for Plaintiffs together with interest, attorneys' fees, costs, and disbursements in this action; and said amount exceeding the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that the Court enter judgment in their favor and against Defendants, containing the following relief:

A. An award of damages against Defendants in an amount to be determined at trial, but not less than $150,000.00 per intimate image shared, plus prejudgment interest, to compensate Plaintiffs for all non-monetary and/or compensatory damages, including, but not limited to, compensation for Plaintiffs' emotional distress;

B. An injunction and order permanently restraining Defendant Patel from disseminating H.F.'s intimate images without his permission or consent;

C. An award of punitive damages, and any applicable penalties and/or liquidated damages in an amount to be determined at trial;

D. Prejudgment interest on all amounts due;

E.    An award of costs that Plaintiffs have incurred in this action, including, but not limited to, expert witness fees, as well as Plaintiffs' reasonable attorneys' fees and costs to the fullest extent permitted by law; and

F.    Such other and further relief as the Court may deem just and proper.

Dated: New York, New York
          December 23, 2025

Respectfully submitted,

**Veridian Legal P.C.**

By:    Daniel S. Szalkiewicz, Esq.
23 West 73rd Street, Suite 102
New York, NY 10023
Telephone: (212) 706-1007
Facsimile: (646) 849-0033
daniel@VeridianLegal.com
*Attorneys for Plaintiffs*

# Exhibit 1

## Civil Action Order - Juvenile

☐ Interim  ☒ Final Disposition  ☐ Amended  ☐ Commitment   Sussex ____ County

**State in the Interest of:**

Juvenile: appearing

**AROOSH PATEL VIA ZOOM**

Parent:   appearing

**BHAWAR PATEL VIA ZOOM**

Defense Attorney: (Private Attorney)   appearing

MATTHEW TROIANO, ESQ. VIA ZOOM

Other Appearances:                            appearing
K. MCSWEENEY/VICTIM'S ADVOCATE, VICTIM AND HIS
MOTHER VIA ZOOM

Interpreter for: (include language needed)  ☐ Parent _____  ☐ Juvenile _____

☒ CourtSmart  Tape # ____  Counter # ____ to ____

Juvenile: Contact Information   ☐ Change of Address/Phone

| Juv: Birth Date | Gender | FACTS ID Number | SBI Number |
|---|---|---|---|
| 12/21/07 | MALE | | |

Prosecutor: appearing
CARLY ABRAMS VIA ZOOM

Probation Officer: appearing
LOU COLUCCI VIA ZOOM

## Type of Hearing

| **Counsel** Mandatory | Plea |
|---|---|

Whereby, the following is ORDERED on: 2/21/2025

## ASFA Finding (42 USC 671(a)(15))
- No ASFA findings required at this time.

- Psychosexual evaluation follow all recommendations
- Predisposition Report: waived

## Detention / Shelter
- Section not applicable

## DISPOSITION: Deferred Disposition / Probation / JISP
- Juvenile placed on probation for 18 months and Juvenile must comply with all standard conditions of probation.

**The Court hereby retains jurisdiction over said juvenile pursuant to N.J.S.A. 2A:4A-45.**

## DISPOSITION: Conditions of Probation / JISP
- Complete community service of 50 hours
- DNA sample and payment required
- Submit to random substance abuse testing
- Other: minimum 200 word apology letter to H.F.; 1000 word essay on the dangers of extorting people online

## DISPOSITION: Miscellaneous
- An Appeal Rights Form has been executed.
- Other: continue current therapy; follow the rules of school, home, and any treatment program(s) or providers; commit no new offenses

## DISPOSITION: Restrictions
- No contact with victim(s) H.F. or his family
- Other restrictions no possession of weapons

## State Plea / Disposition Recommendations
- Section not applicable

## Charges and Related Information: Put lead disposition first

| Ct # | Initial Charge | Final Charge | Plea/Find | Final Statute | Deg. | Penalties | Term/Disposition | CC/CS |
|---|---|---|---|---|---|---|---|---|
| | Docket #: FJ-19-40-25 | | Date of Offense: 07/18/2024 | Date of Arrest: 09/26/2024 | | | | |
| 1 | 2C:24-4B(5)AI | | D | | 2nd | $0 | | |
| 2 | 2C:24-4B(5)BIII | | D | | 3rd | $0 | | |
| 3 | 2C:14-9.1C(2) | Sexual Extortion | P:G | 2C:14-9.1A(2) | 3rd | $0 | | |
| 4 | 2C:33-4.1A(2) | Cyber Harassment | P:G | 2C:33-4.1A(2) | 4th | $0 | | |

| TOTALS (Probation, Incarceration, Penalties, etc.) | | | | | | $0 | | |

### Whereby the following is further ordered that:

IF JUVENILE SUCCESSFULLY COMPLETES PROBATION, AN APPLICATION FOR RETROACTIVE CARRY ORDER CAN BE MADE; STATE RETAINS DISCRETION TO REJECT THE APPLICATION IF IT IS DEEMED NECESSARY AND APPROPRIAT; COUNT 3 AMENDED

Clerk's Initials   s/RP
                   RP

Referee   s/

Judge   s/Dina M. Mikulka
        DINA M. MIKULKA, JSC.

FILED
February 21, 2025
DINA M. MIKULKA, J.S.C.

Exhibit
2

Dear ⬛⬛ family,

Words cannot describe how much pain and suffering I have caused you. In my life, I have truly never done something so heinous and evil.  I feel terrible about my conduct and its impact on you and your family.  To H.F. especially, I am sorry for all of the pain I have caused you.  I committed a horrible sin.  I don't know that I can do anything to lift this horrible trauma away from you, but I want you to know how sorry I am. Additionally, I want to tell you that this letter, regardless of its mandatory matter by the state, is coming from the bottom of my heart. I hope to ease the pain I have caused you by being apologetic and  sorry, and hoping you have some sort of closure.  I have done a terrible thing to you and your friends. Although I did this, and knew what I was doing, I now know that I never want to cause this type of pain and suffering to anyone again. I don't know how you are doing in life, but I wish nothing but the best.  While this was happening, and even during the early parts of the case against me, I was upset.  Now all I feel is guilt for putting you through this. I would never wish this upon anyone but sadly, I did this action to you.  I want you to know that when this was occurring, it was a horrible time in my life.  I was struggling with my own identity and values. I had a similar experience happen to me, and I built up anger and emotion and feelings that were directed where they should not have been.  I took my feelings out on others and made a horrible mistake in doing so.  I hope and pray that over time this atrocious situation will lessen in your memory, but regardless, I will remain sympathetic and apologetic for what I did.  I will never expect you to forgive me.  I don't even forgive myself.  But I do hope that you will be able to move forward in the future.  I know that I will never be that same awful person again.

Sincerely,
Aroosh Patel.